**\*Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                          :
PETER DIPIETRO,                           :        Civil Action No. 08-4761 (FLW)
                                          :
              Plaintiff,                  :
                                          :
       v.                                 :
                                          :               **OPINION**
NEW JERSEY FAMILY SUPPORT PAYMENT         :
CENTER, SUPERIOR COURT OF NEW JERSEY,:
<u>et</u> <u>al</u>.,                      :
                                          :
              Defendants.                 :
_____:

<u>**WOLFSON, United States District Judge**</u>**:**

Presently before the Court are two separate motions to dismiss <u>pro se</u> Plaintiff Peter

DiPietro's ("Plaintiff") Complaint filed by defendants, Joanna Vassallo ("Vassallo") and New Jersey

Family Support Payment Center, Superior Court of New Jersey, Gloucester County Probation

Services, Susan Sasser, Vicinage Assistant Chief Probation Officer, New Jersey Motor Vehicle

Commission, Sharon Harrington, Chief Administrator, and Christie Morgandale, Case Worker (the

"State Defendants")(collectively, "Defendants"). Plaintiff cross-moves for sanctions. For the reasons

more fully set forth below, Defendants' motions are granted, and Plaintiff's cross-motion is denied.

## I. STATEMENT OF FACTS

Plaintiff and Vassallo were divorced in April 2001. The Superior Court of New Jersey,

Chancery Division, Family Part, ordered Plaintiff to pay $180.00 per week in child support through

defendant New Jersey Family Support Payment Center ("FSPC"). (Complaint, ("Comp."), ¶ 18.)

By Order dated March 4, 2002, Plaintiff was notified that two or more missed payments could result

in the issuance of a warrant for his arrest, without further notice or hearing. (Sapienza Certification, ("Cert."), ¶ 3, Exh. A.)

It appears that Plaintiff failed to meet his child support obligations from July 2007 through February 2008. On or about March 27, 2008, Plaintiff submitted a partial child support payment, written on his business account, in the amount of $750.00. The check was returned for insufficient funds. Under New Jersey law, child support obligors who have bounced a check are required to make future payments in the form of a cashier's check or money order. When Plaintiff submitted his April 2008 payment in the form of a check, FSPC returned the check and notified Plaintiff that because of his "dishonored check" history, future payments would only be accepted in the form of a money order, cashier's check, certified check, or electronic payment via Expert Pay. Plaintiff resubmitted the returned check, "stating it was his right as to what method of payment he made." Plaintiff complained he was being inconvenienced and refused to comply with the FSPC's instructions. Instead, he continued to submit payments in the form of personal/business checks. The FSPC did not accept any of Plaintiff's person/business checks after his March 27, 2008 check bounced.

The Probation Division monitors compliance and enforces child support orders entered by the Chancery Division, Family Part. N.J.S.A. 2A:168-11 (b). On or about May 13, 2008, defendant Superior Court Gloucester County Probation Services, Child Support Enforcement ("Probation Services") sent Plaintiff a "Notice to Obligor to Establish or Increase Arrearage Payment on Income Withholding" (the "Notice"). The Notice informed Plaintiff that he was in arrears $7,402.00 and that his $180 weekly child support payment, plus $40 arrearage, would begin to be withheld from his income.

On May 21, 2008, in accordance with New Jersey Court Rules, Probation Services notified Plaintiff that due to his failure to pay child support, a bench warrant for his arrest had been sent to a judge for approval and that his driving privileges would be suspended once the warrant issued. (Compl., ¶ 30.) Probation Services provided Plaintiff with a copy of his child support payment history, which showed he had made no payments by personal check or otherwise, from July 2007 to February 2008. (Sapienza Cert., Exh. F.)  That same day, John Tomasello, J.S.C., signed the warrant for Plaintiff's arrest and directed Motor Vehicles to suspend Plaintiff's driving privileges. (Sapienza Cert., Exhs. G, H.)

Plaintiff filed this Complaint on September 22, 2008.  In his complaint, Plaintiff alleges a violation of 42 U.S.C. § 1983 against all defendants (Count I); a violation of  42 U.S.C. § 1983 against the Motor Vehicle Commission and Sharon Harrington, Chief Administrator, in connection with the suspension of his driving privileges (Count II); a violation of the Fair Debt Collection Practices Act against all defendants (Count III); violations of the New Jersey Constitution against all defendants (Count IV); a state law malicious prosecution tort claim against all defendants relating to the warrant that was issued for Plaintiff's arrest (Count V); a state law malicious abuse of process tort claim against all defendants (Count VI); a state law tort claim against all defendants for intentional infliction of emotional distress and negligent infliction of emotional distress (Count VII); and a "Government Abuse of Power/Government Oppression; Government Employees Wrongfully Enforcing Laws Against Plaintiff" claim against all defendants (Count VIII).  Plaintiff asks, inter alia, for a declaratory judgment against all defendants and for an injunction requiring defendants to "cease and desist using 'Kangaroo Court' process to fabricate child support amounts, then us[ing] these fraudulent amounts  to threaten, arrest and imprison Plaintiff (and others) for profit and gain

3

from unsuspecting taxpaying public." He also seeks over $100,000 in compensatory damages, more than $1 million in punitive damages, plus interest, and costs of suit. Plaintiff further asks the Court to appoint a "civil rights attorney" and special federal grand jury to investigate all of the defendants.

On November 19, 2008, Vassallo filed a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). On January 27, 2009, the State Defendants moved to dismiss under the Younger Abstention Doctrine, Eleventh Amendment Immunity, failure to state a claim, and failure to file a notice of claim under the New Jersey Tort Claims Act.

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that

4

discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009).  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1949.

## III. DISCUSSION

### A.    Defendant Vassallo

To begin his far-reaching theories of liability against Defendant Vassallo, Plaintiff aggrandizes that this case is one of first impression. Nowhere in his submission does he dispute that he did not satisfy all of the child support payments owed.  Instead, Plaintiff writes a lengthy brief asserting everything from judicial bias to his antagonism towards the child support system in New Jersey, in an attempt to excuse his derelictions.  The Court will address Plaintiff's policy arguments later in this Opinion and now, will turn to legal arguments relating to Plaintiff's claims against Vassallo.

To reiterate, Plaintiff asserts violations of § 1983, the Fair Debt Collection Practices Act (FDCPA) and multiple sections of the New Jersey Constitution against Vassallo.  In addition, Plaintiff complains of malicious prosecution, malicious "abuse/misuse/use of process," intentional or negligent infliction of emotional distress, and governmental oppression by Vassallo acting in

concert with the State Defendants.  Because these claims are inappropriately asserted against Vassallo and without merit, the Court dismisses them in their entirety.

### 1.      Deprivation of Civil Liberties in Violation of 42 U.S.C. § 1983

In Count I, Plaintiff alleges that Vassallo acted under color of law and "color of fraud" to deprive him of his civil liberties in violation of § 1983.  The Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.  This particular Amendment governs only state action, not the actions of private citizens or organizations. Rendell-Baker v. Kohn, 457 U.S. 830, 837-38 (1982) (citing, inter alia, Civil Rights Cases , 109 U.S. 3, 11 (1883))  Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights "under color of any statute, ordinance, regulation, custom, or usage" of a state. See 42 U.S.C. § 1983; Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005).  Actions relating to "under color of law" are the equivalent of  "state action" under the Fourteenth Amendment.  Rendell-Baker, 457 U.S. at 838; Benn v. Universal Health Sys., Inc., 371 F.3d 165, 169 n.1 (3d Cir. 2004).  Accordingly, to state a claim of liability under § 1983, Plaintiff must allege that he was deprived of a federal constitutional or statutory right by a state actor. Leshko, 423 F.3d at 339.  The sole issue in this claim to consider is whether § 1983's state actor requirement can be so diluted as to include Vassallo, the biological parent of the child receiving Plaintiff's child support payments.

As an initial note, Plaintiff cannot argue that any individual, who, in enforcing his or her rights through the courts, does so at the risk of exposing herself to § 1983 liability. Thus, because Defendant Vassallo is a private citizen, and there is no allegation that she is a state employee, Plaintiff resorts to stretching the state actor requirement by advancing that since Vassallo's interests

are so closely intertwined with those of the State that this relationship subjects Vassallo to liability.

While Supreme Court cases under the Fourteenth Amendment draw no "simple line" between states and private persons, Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001), the principal question at stake is whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Id. (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351(1974)). State action cases broadly divide into two factual categories. See Brentwood Acad., 531 U.S. at 296. The first category involves an activity that is significantly encouraged by the state or in which the state acts as a joint participant.  See Blum v. Yaretsky, 457 U.S. 991 (1982) (holding state action to be present where the state provides "significant encouragement, either overt or covert" for the activity); Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982) (holding state action to be present where private citizen employed challenged state prejudgment attachment process, thus participating in the state's action). Determining state action requires tracing the activity to its source to see if that source fairly can be said to be the state.  The question is "whether the fingerprints of the state are on the activity itself."  Leshko, 423 F.3d at 340.  In adhering to this approach, "facts are crucial." Crissman v. Dover Downs Entm't Corp., 289 F.3d 231, 234 (3d Cir. 2002) (en banc).

The second category of cases involves an actor that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management. See Pennsylvania v. Bd. of Dir. of City Trusts of Philadelphia, 353 U.S. 230, 231 (1957) (per curiam) (holding private organization to be state actor where the organization was controlled by a state agency); West v. Atkins, 487 U.S. 42, 56 (1988) (holding private doctor to be state actor where he performed a function traditionally and exclusively reserved to the state); see also Burton v.

7

Wilmington Parking Auth., 365 U.S. 715, 724 (1961) (holding private business to be state actor where there were "mutual benefits" between the state and the business). "Determining state action in this category of cases consists of asking whether the actor is so integrally related to the state that it is fair to impute to the state responsibility for the action." Leshko, 423 F.3d at 340. The relevant inquiry here is "whether the state so identifies with the individual who took the challenged action that it can be deemed that the state's fingerprints to have been on the action." Id.

Pursuant to Third Circuit precedent, the determination starts by aligning the case at hand with the Supreme Court case most factually akin to it. Lashko, 423 F.3d at 339. While there are several tests that have been devised by courts in making this determination, Plaintiff throws in the kitchen sink by utilizing a host of tests[1] to show that Vassallo is a state actor. The Court need not apply these tests to the case at hand because Plaintiff has failed to allege the most basic element that is necessary in all of the tests - the action in which Vassallo allegedly was involved in to deprive Plaintiff of his civil liberties.  First, to the extent Plaintiff suggests that Vassallo's filing of divorce, and subsequently awarded child support from Plaintiff in the divorce proceeding, is a state action, the argument fails. "Filing a lawsuit in state court, is not for 1983 purposes 'state action;' nor does it turn a private citizen into a state actor." Gueson v. Feldman, No. 00-1117, 2001 U.S. Dist. LEXIS 24210, at *10 (E.D. Pa. Nov. 30, 2001). Next, Plaintiff's "novel" theories - Vassallo was acting under color of law because she is functionally a government official as a custodial parent, or that she is a state actor because she is acting in accordance with a state court order or governmental regulation - fail to aver that Vassallo took any actions to deprive Plaintiff of his constitutional rights.

---

[1]Plaintiff uses the symbiotic relationship test; public function test; close nexus test; joint participation doctrine; and pervasive entwinement test.

See Joynes v. Meconi, No. 05-332, 2006 U.S. Dist. LEXIS 71296, at *35 (D. Del. Sep. 30, 2006)(defendant is not a state actor because she is a private individual who merely took legal measures to obtain child support for her son).

More importantly, aside from the fact that Vassallo did not take any action, Plaintiff fails to allege anything that would demonstrate that Vassallo was so integrally related to the State that it is fair to impute the State's responsibility to Vassallo; nor does he allege that any of the State Defendants significantly encouraged Vassallo to take any action.  Equally deficient are Plaintiff's conclusory allegations that Vassallo is liable for the state's action because she and the State Defendants conspired to collect child support payments from Plaintiff.  The Court would have to indulge in wild speculation to find sufficient facts to support Plaintiff's claims in this regard.  Rather, the only actions alleged in the Complaint are the State Defendants' actions to pursue child support arrears from Plaintiff in accordance with state regulations.  Vassallo and her child were merely passive beneficiaries of the process.  These allegations are plainly insufficient to find Vassallo a state actor under any tests set forth by the Supreme Court in this context.  See Id.  As such, Plaintiff's § 1983 claims against Vassallo are dismissed.

### 2.    Violation of Fair Debt Collection Practices Act, 15 U.S.C. § 1692

In this claim, Plaintiff asserts that Vassallo violated Plaintiff's fundamentally secured rights by conspiring with the State Defendants to violate the FDCPA.  To support his flawed logic, Plaintiff first cites to various New Jersey child support statutes and highlights the portions that govern income garnishment.  In so doing, Plaintiff again suggests that Vassallo, as a custodial parent, is a government official because she is being paid by the state to care for her child with money which is "essentially 'laundered' through the child support bureaucracy accounting methods."  See

Plaintiff's Brief in Opposition, p. 30.  Plaintiff then offers the Court numerous pages of arguments that amount to nothing but more illogical reasons why Vassallo is a state actor, all of which the Court has already rejected in the previous section.  See § A, supra.  Indeed, this claim is deficiently pled because Plaintiff fails to allege or explain how Vassallo, or even the State Defendants, are "debt collectors" within the purview of the FDCPA.

The FDCPA's provisions generally apply only to debt collectors." Pollice v. National Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000) (citation and internal quotations omitted). "Creditors -- as opposed to debt collectors -- generally are not subject to the FDCPA." Id. (citation and internal quotations omitted).  A "debt collector" is broadly defined as one who attempts to collect debts "owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); see FTC v. Check Investors, Inc., 502 F.3d 159, 171 (3d Cir. 2007).  In light of the definition, Plaintiff's FDCPA claims against Vassallo must fail.  First, Plaintiff does not allege that Vassallo, personally, is in the business of collecting debts or regularly collects or attempts to collect debts for another or, in any other way, meets the definition of "debt collector" for the purposes of the FDCPA.  In addition, Plaintiff has not alleged that Vassallo has taken any personal actions to collect the child support payments.

To the extent Plaintiff predicates his FDCPA claim on an agency theory, Plaintiff's claim also fails.  The FDCPA proscribes various activities of debt collectors but excludes from the definition of "debt collector" any officer or employee of the United States or any state to the extent that collecting or attempting to collect any debt is in the performance of his official duties. 15 U.S.C. § 1692(6)(c); Heredia v. Green, 667 F.2d 392, 394 (3rd Cir. 1981)(holding that a state officer was exempt from the FDCPA where his acts were within his official duties). Specifically, in the context

of child support, the Seventh Circuit, relying on <u>Heredia</u>, has held that "[c]ollecting child support

that is due parents on public aid is a duty of [state] employees . . . and they are therefore exempt from

suit under the FDCPA for doing so."  Okoro v. Garner, 21 Fed. Appx. 486, 488 (7th Cir. 2001).

Moreover, child support is not an "obligation . . . of a consumer to pay money arising out of a

transaction in which the money, property, insurance, or services which are the subject of the

transaction are primarily for personal, family, or household purposes." 15 U.S.C. 1692a(5); <u>see</u> <u>Mabe</u>

<u>v. G.C. Servs. Ltd. P'ship</u>, 32 F.3d 86, 88 (4th Cir. 1994) (holding that child support obligations are

not "debts" within the scope of the FDCPA).  Clearly, in the present case, none of the State

Defendants is a "debt collector" under the FDCPA.  Therefore, even if an agency theory is viable,

because the State Defendants are excluded from the Act, so is Vassallo.  Accordingly, Plaintiffs'

FDCPA claims against all Defendants are dismissed.

### 3.     Violations of the New Jersey Constitution

Plaintiff alleges general violations of his rights under Article I, §§ 1, 2, 5, 7-13, 20 and 21

of the New Jersey Constitution.  In support of these claims with respect to Vassallo, Plaintiff re-

alleges Vassallo's involvement as the State Defendants' co-conspirator to deprive him of his state

constitutional rights.  It is noteworthy that Plaintiff did not advance any arguments in support of his

constitutional claims against Vassallo.  Whether or not Plaintiff has effectively abandoned these

claims, the Court will address each of these allegations in turn.

In Paragraph 84, Plaintiff alleges that Vassallo discriminated against him because of his

gender and in Paragraph 87, Plaintiff alleges in a conclusory manner that Vassallo, in conspiracy

with the other named defendants, "alienated the parties' minor child from Plaintiff."  These claims

fail because Plaintiff does not allege any facts to support them.  Importantly, Plaintiff does not allege

any action Vassallo took to discriminate against him or how she conspired with the State Defendants. In Paragraph 85, Plaintiff alleges that Vassallo deprived Plaintiff of his right to a trial by jury. Similarly, in Paragraph 86, Plaintiff alleges that Vassallo violated his right to be free from imprisonment. Finally, in Paragraph 88, Plaintiff alleges that "[a]s a result of this policy, actions and standard operating procedure used by the State Defendants described above, Plaintiff's constitutional rights [are] being violated." Vassallo is without the authority to deprive Plaintiff these constitutional safeguards or rights and thus, these claims are inappropriately asserted against her.

### 4. Malicious Prosecution and Malicious Abuse/Misuse/Use of Process

In Count V, Plaintiff alleges that Vassallo maliciously prosecuted Plaintiff. Malicious Prosecution is a New Jersey state common law cause of action to seek redress when someone maliciously files a criminal or civil complaint against another before a judicial tribunal or other adjudicatory body, with malice and without probable cause, that may adversely affect legally protected interests. See Lind v. Schmid, 67 N.J. 255, 262 (1975); see also Paterson Tallow Co. v. Royal Globe Ins. Co., 89 N.J. 24, 35 (1982); Brunson v. Affinity Fed. Credit Union, 402 N.J. Super. 430, 438 (App. Div. 2008). Similar elements exist for a claim of malicious abuse of legal process. See Turner v. Song, 363 N.J. Super. 186, 203-204 (App. Div. 2003). In addition, however, the malicious use of process requires proof of a deprivation of liberty or "other special grievance." Id. at 204 (citations omitted). "The tort of malicious use of process is disfavored out of fear that its use could chill free access to the courts," Tedards v. Auty, 232 N.J. Super. 541, 549 (App. Div.1989), and "consequently, it is not much resorted to." Turner, 363 N.J. Super. at 204.

In the present case, Plaintiff fails to aver that Vassallo filed any criminal or civil complaint against him, other than the complaint for divorce filed in 2000, which is not the subject of his claims.

Plaintiff does repeat the allegations that Vassallo acted in concert with the State Defendants to file a "bench warrant" for failure to pay child support.  However, a bench warrant is not a complaint and Plaintiff does not allege that Vassallo petitioned the state court seeking a bench warrant.  Moreover, aside from the bench warrant, Plaintiff fails to allege any further action taken by Vassallo after her initial filing of the divorce complaint.  Thus, the common law elements required to establish a malicious prosecution and malicious abuse of process have not been sufficiently pled by Plaintiff and as such, these claims against Vassallo are dismissed.

**5.      Intentional/Negligent Infliction of Emotional Distress**

In Count VII, Plaintiff alleges both intentional and negligent infliction of emotional distress. Under New Jersey law, to defeat a motion to dismiss, a plaintiff must plead facts to show that (1) the defendant acted intentionally or recklessly, or, negligently; (2) the conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; (3) the defendant's actions were the proximate cause of the emotional distress; and (4) the distress suffered was so severe that no reasonable person could be expected to endure it.  See Buckley v. Trenton Sav. Fund Soc., 544 A.2d 857, 863 (1988); Turner, 363 N.J. Super. at 199-200.  "Extreme" conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Buckley, 544 A.2d at 863 (citations omitted).

In the present case, Plaintiff alleges that he suffered emotional harm from the intentional actions, as delineated in previous sections of this Opinion, taken by the State Defendants and Vassallo.  These allegations are insufficient under Twombly to state a legitimate cause of action of intentional or negligent infliction of emotional distress.  Without any specific facts, Plaintiff merely

13

tracks the element of these two claims by alleging that the misconduct was outrageous and that it directly caused him emotional distress.  Moreover, Vassallo has not been alleged to have taken any actual action, aside from divorcing Plaintiff and being awarded both legal and physical custody of their child and child support.  Instead, Plaintiff complains that the inconvenience of having to pay with a bank check rather than his personal check tantamount to severe emotional distress that should be compensable by law.  His allegations fail to allege an emotional distress claim as they are baseless and frivolous and therefore, it is dismissed as against Vassallo.

Finally, in Count VIII, Plaintiff alleges that Defendants abused their government power and wrongfully enforced laws against him.  Because Vassallo is a private citizen, this claim is inappropriately asserted against her; as such, this claim is also dismissed as against Vassallo.

### B.    The State Defendants[2]

The State Defendants argue that this Court should abstain from exercising jurisdiction over Plaintiff's complaint pursuant to Younger abstention doctrine.  In Younger v. Harris, 401 U.S. 37, 44 (1971), the Supreme Court held that principles of equity and comity require that unless there are extraordinary circumstances justifying intrusion, district courts should not enjoin pending state criminal prosecutions.  The  Younger court explained that the notion of comity includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their

---

2

Plaintiff attempts to disqualify the State Attorney General from representing the State Defendants because of an alleged conflict of interest arising from a potential financial gain in the outcome of his child support case.  Plaintiff's argument is specious.  The State Defendants are stautorily entitled to be represented by the Attorney General.  N.J.S.A. 52:17A-4.

separate ways." Id. at 44.

The doctrine has since been expanded to apply to other state proceedings where important state interests are implicated. See, e.g., Huffman v. Pursue,Ltd., 420 U.S. 592, 604 (1975)(extending the Younger abstention doctrine to civil enforcement proceedings); Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619 (1986)(applying the Younger abstention doctrine to pending state administrative proceedings). However, the situations in which Younger should be applied are clearly defined and the application of the doctrine remains "'the exception, not the rule.'" New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 359 (1989)(quoting Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 236 (1984)).

The Third Circuit has held that abstention under Younger is appropriate in certain domestic relations disputes. See Dixon v. Kuhn, 257 Fed. Appx. 553, 555 (3d Cir. 2007)(held that Younger abstention is appropriate in child support proceedings); Yang v. Tsui, 416 F.3d 199 (3d Cir. 2005). In order for a district court to abstain under Younger, three requirements must be met: (1) there must be ongoing state proceedings that are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must provide an adequate opportunity to raise federal claims. Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

As an initial matter, Plaintiff erroneously claims that Younger does not apply to his claims as his Complaint is civil in nature. As noted supra, his argument is contrary to well-established case law that has extended the doctrine to civil litigation and certain administrative proceedings. He also argues that the State Defendants are "uninvited third party interlopers" in his Superior Court litigation and therefore the doctrine does not apply. Plaintiff disregards the fact the State Defendants

are not parties to his state litigation; the only defendant is Vassallo.

Turning to the first prong of <u>Younger</u>, the Third Circuit in <u>Anthony</u> has instructed that child support enforcement proceedings are the type of proceeding subject to the <u>Younger</u> doctrine. <u>Anthony v. Gerald Council</u>, 316 F.3d 412, 419 (3d Cir. 2003). The court held that "[e]nsuring the provision of child support is a function particular to the states. New Jersey law provides New Jersey courts with the authority to order and direct the payment of child support." <u>Id.</u> Each order requires continual involvement by the New Jersey courts. Under New Jersey law, parents are obligated to provide support until a child is emancipated. <u>Id.</u> (citing <u>Newburgh v. Arrigo</u>, 88 N.J. 529, 443 A.2d 1031, 1037 (N.J. 1982)). Throughout the duration of the order, the New Jersey courts are charged with monitoring, enforcing and modifying the child support obligations. <u>See</u> <u>N.J.S.A.</u> 2A:17-56.9a. As is apparent, the New Jersey courts perform their delegated functions with respect to child support orders. <u>Id.</u>

In the present case, Plaintiff concedes in his Complaint that there is a pending enforcement proceeding against him for child support. As such, the first <u>Younger</u> factor is met since the child support proceeding is "ongoing." Indeed, as the Third Circuit explained, "a party subject to a child support order 'is a party to an open case that will not terminate until the child support order is finally discharged.'" <u>Dixon</u>, 257 Fed. Appx. at 555 (quoting <u>Anthony</u> 316 F.3d at 420).

With respect to the second <u>Younger</u> factor, important state interests are clearly implicated in Plaintiff's state court proceedings. "New Jersey has an overriding interest in ordering, monitoring, enforcing and modifying child support obligations." <u>Anthony</u>, 316 F.3d at 421. The <u>Anthony</u> court reasoned, "such a comprehensive and fluid system designed to address the ever-present and ever-changing realities of child support orders must be viewed as a whole, rather than as individual,

discrete hearings." Id. As such, the second predicate of the Younger test is satisfied.

As for the last prong, Plaintiff essentially argues that the state proceedings do not provide an adequate opportunity for him to raise his claims as the New Jersey courts are "inherently biased with regard to maximizing the amount of child support in order to bring in federal reimbursement incentive funding to increase the state budget, pad state employee and judicial salaries and pensions, and to maintain the child support bureaucracy at the expense of noncustodial parents and taxpayers like Plaintiff," yet provides no factual allegations sufficient to support his legal conclusions as required under Twombly.  Nonetheless, "the burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of [its] claims." Anthony, 316 F3d at 422 (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987)(quotations omitted)).  Here, the State Defendants maintain that Plaintiff would encounter no difficulty adjudicating his claims in the New Jersey courts.  The Court agrees.

The Court finds support in the Third Circuit's ruling in Anthony for this determination.  In Anthony, the Third Circuit upheld the district court's decision to abstain from a state child support enforcement proceeding.  In dismissing the plaintiffs' § 1983 constitutional claims, the court explicated that the plaintiffs have the opportunity to raise their issues in any child support hearing and to appeal adverse decisions through the state appellate system and eventually to the United States Supreme Court.  Id. at 422; see 28 U.S.C.S 1257.

The Third Circuit reasoned that under New Jersey law, child support matters are heard in the Superior Court of New Jersey, Chancery Division, Family Part. See N.J.R. 5:1-1, 1983 explanatory note (The "Family Part of the Chancery Division [is] a co-equal unit of the Superior Court . . . [and is part of] a single integrated statewide trial court of general jurisdiction."); N.J.R. 5:1-2 (listing

17

"actions . . . cognizable in the Family Part").  Consequently, there is a continuing, open and available

forum to raise any issues. "Child support obligors are free to raise their issues at any time at any child

support hearing or contempt hearing.  Obligors can appeal, as of right, decisions of the Family Part

to the Appellate Division."  Id. at 422.  Subsequent appeal to the New Jersey Supreme Court is

available as of right or on certification depending on the specifics of the case.  Id.; N.J.R. 2:2-1.

 Moreover, the Third Circuit opined that federal court ruling and relief would address issues

that plaintiffs can raise in their own cases pending in the New Jersey courts.  Importantly, the court

cautioned that "[f]ederal ruling and relief also would interfere with and disrupt the New Jersey court

system, especially if the federal court must monitor and enforce the state courts' compliance with a

federal order.  Id. (citing Parker v. Turner, 626 F.2d 1, 8 (6th Cir. 1980)(stating that a federal order

requiring state courts to provide appointed counsel and other asserted due process rights would

necessitate continual federal court monitoring of the state courts)).  A federal court ruling could be

"interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles,"

a suggestion the Younger doctrine seeks to avoid.  Id. (quotations omitted).[3]

---

   [3]

In concluding that abstention is appropriate in Anthony, the Third Circuit found support in out-of-circuit cases that are in general accord.  Anthony, 316 F3d at 423-24.  In Parker, the Court of Appeals for the Sixth Circuit held that abstention was appropriate when plaintiffs sought certain due process rights, including right to appointed counsel, in future child support hearings. 626 F.2d 1. The Third Circuit agreed with Parker that federal courts should avoid improper interference with state proceedings.  Anthony, 316 F3d at 423-24.  In Henkel v. Bradshaw, the Court of Appeals for the Ninth Circuit held that abstention under Younger was appropriate when a child support "contempt proceeding [was] still pending and [would] not be set for a hearing on the merits until the resolution of [the federal] action." 483 F.2d at 1388 n.5. Also, in Johnson v. Zurz, 596 F. Supp. 39 (S.D. Ohio 1981), and Mastin v. Fellerhoff, 526 F. Supp. 969 (S.D. Ohio 1981), federal trial courts suggested that abstention might normally be appropriate when plaintiffs sought due process rights in child support hearings. Those courts held that abstention was only inappropriate in the particular cases due to "extraordinary circumstances," which denied plaintiffs the ability to press their claims adequately in state court.  Anthony,316 F3d at 423-24; see Johnson, 596 F. Supp. at 44; Mastin, 526

In the present case, Plaintiff may appear before the Family Part of the New Jersey Superior Court to raise any issues he has with regard to his child support obligations - including his allegations of judicial bias. The Superior Court has the power to issue an order vacating his arrest warrant and reinstating his driving privileges.  All of the child support claims may be addressed by that court, and, if he is not satisfied, Plaintiff may file an appeal.

Nonetheless, Plaintiff boasts that every judicial officer and state employee implicated in his Complaint is inherently biased and corrupt, because each of these individuals, including each of the New Jersey Supreme Court justices, is motivated by federal funding.  He promotes his concerns as an important policy consideration worthy of federal judicial intervention.  In that regard, Plaintiff urges this Court to intervene and essentially re-invent a brand new child support system in this State that would appear to be more "convenient" to his needs.  While the Court must view the allegations in light most favorable to Plaintiff, it need not credit Plaintiff's conspiracy theories based on nothing but his disagreement with his child support orders.   Simply put, Plaintiff has not, and cannot, demonstrate a legitimate "extraordinary circumstance" in this case to justify federal intervention. The Court is confident that any constitutional challenge to state court practice would receive proper consideration by the New Jersey courts.  See Anthony,  316 F3d at 423; see also McDaniels v. N.J. Div. of Youth & Family Servs., 144 Fed. Appx. 213, 215-16 (3d Cir. 2005)(if the plaintiff "availed herself of the state proceedings available to her, those proceedings would have presented her with

_____

F. Supp. at 971.

The Court of Appeals for the Fourth Circuit also held, in an unpublished opinion, that Younger abstention was appropriate when a party alleged in federal court that a child custody and support award issued in Virginia violated the First, Fifth, Thirteenth, and Fourteenth Amendments. Etlin v. Dalton, 673 F.2d 1309 (4th Cir. 1981).

the opportunity to pursue her federal constitutional claims[;] . . . Younger Abstention was therefore

proper"); <u>Lui v. Comm'n on Adult Entm't Establishments</u>, 369 F.3d 319, 326-27 (3d

Cir.2004)("[s]tate courts are every bit as competent to deal with . . . claims under both the State

constitution and the Federal constitution").  Accordingly, with the exception of Count III of the

Complaint (claims pursuant to the FDCPA), which has been dismissed by the Court in § A of this

Opinion, the Court abstains from exercising jurisdiction and dismisses Counts I, II, IV, V, VI, VII

and VIII against the State Defendants pursuant to the <u>Younger</u> abstention doctrine.[4]

   As this Court has dismissed Plaintiff's claims, Plaintiff's motion for sanctions is also denied.

## IV. CONCLUSION

   Plaintiff's FDCPA claim is dismissed against all Defendants, all claims against Vassallo are

dismissed and the remainder of the claims against the State Defendants are dismissed pursuant to

the <u>Younger</u> absention doctrine and his cross-motion for santions is denied.


DATED: June 10, 2009

                                    /s/ Freda L. Wolfson
                                    Freda  L.  Wolfson,  U.S.D.J.

                                    -

---

[4]With respect to Plaintiff's state law tort claims asserted in Counts V-VIII, it appears that Plaintiff did not file tort claim notices for these claims necessary under <u>N.J.S.A.</u> 59:8-8. Accordingly, although the Court does not address these claims here, it appears that Plaintiff will not be successful in prosecuting them in state court.